OPINION
This appeal is taken by Kenneth T. Richey from the judgment entered by the Court of Common Pleas of Putnam County denying his second petition for post conviction relief. The court conducted no evidentiary hearing.
The Ohio Supreme Court summarized the facts of this case in its opinion affirming Richey's prior conviction and death sentence:
 "Around 4:15 a.m., on June 30, 1986, in Columbus Grove, Ohio, a raging fire broke out in Hope Collins's second-floor apartment, killing Cynthia Collins, Hope's two-year-old daughter. Less than an hour before, Hope had left her apartment after Kenneth T. Richey, defendant-appellant, agreed to baby-sit Cynthia. Circumstantial evidence established that while in Hope's apartment, Richey had spread gasoline and paint thinner around the apartment and ignited it.
 Richey, Hope, Peggy Price, Candy Barchet, Richey's ex-girlfriend, and a variety of other witnesses to these events lived at the Old Farm Village Apartments in Columbus Grove. Peggy and Hope lived in adjacent second-floor apartments, and Candy lived directly below Hope. All three apartments were in Building or Section "A" at Old Farm Village. Candy and her infant son moved into their apartment around June 15, and she met Richey. Within a few days, Candy and Richey formed a sexual relationship, and Richey frequently told Candy he loved her and "would kill any other guys" she was with.
 On June 24, Richey learned that Candy had just been in bed with John Butler, and [595 N.E.2d 919] Richey pulled a knife on Butler. In response, Butler "bounced him around the room a little bit." Just after that fracas, Richey broke his hand by punching a door, requiring a splint.
 On Sunday evening, June 29, Candy took her new boyfriend, Mike Nichols, to a party in Peggy's apartment; during the party, Candy kissed Nichols openly and told Richey that she wanted to date Nichols. Richey became upset at this news. When Candy went home, around 1:00 a.m., she asked Nichols to spend the night with her, which he did.
 That night, Richey wore his Marine Corps camouflage fatigues and combat boots, and he still had his right hand bandaged in a splint. Some witnesses reported Richey was intoxicated. Jeffrey Kezar recalled Richey saying, "If I can't have her [Candy], nobody else can."
 Richey told several persons that Building "A" would burn that night and he would use his Marine training to do that. Robert Dannenberger described Richey as "very upset" and said Richey threatened to blow the place up since he had "learned how to do explosives" in the Marines. Peggy Price became upset, and Richey told her, "Well, instead of blowing it up, I'll torch A Section." Price recalled that Richey said, "Before the night is over, part of A Building is going to burn down." Shirley Baker also recalls Richey saying, "A Building was going to burn * * *." Juanita Altimus, while just outside her own apartment, overheard Richey say on the landing, "Building A was going to burn tonight."
 By 2:00 a.m., the party was breaking up, and Richey kept asking Hope if he could spend the night on her sofa. Hope refused. Around 2:20 a.m., June 30, Richey offered to steal some flowers for Peggy from a greenhouse across the street, but Peggy told Richey not to bring them to her.
 Between 3:00 and 3:30 a.m., Dennis Smith drove up and asked Hope to go with him. Hope replied she did not have a baby-sitter, but Richey said, "Well, I'll keep an eye on her [Cynthia], if you'll let me sleep on your couch." A neighbor also overheard Hope say to Richey, "Go upstairs with Scootie [Cynthia's nickname] — she's asleep — but don't lock the door because I can't get back in because I don't have a key."
 Around 4:15 a.m., neighbors reported bright orange flames and smoke coming out of the Collins apartment, and the fire department responded. Firemen saw several feet of flames from the apartment and deck curl up over the roof. A resident and a fireman both started into the apartment, but the heat and fire were too intense. A fireman then went back in, with oxygen, but he could not find Cynthia and soon ran out of oxygen.
 Ultimately, several firemen, with fire hoses and oxygen masks, succeeded in removing Cynthia's body from her burning bedroom. Cynthia died from asphyxia related to smoke inhalation.
 When the firemen arrived, Richey was either at the Collins apartment or he arrived shortly thereafter; he was screaming that a child was still inside. One fireman saw him coming out of the apartment, helped him up, and had to restrain him to keep him from going back in. Richey was combative, argumentative, and interfered with efforts to fight the fire and rescue Cynthia. Two deputy sheriffs overpowered Richey and turned him over to Police Chief Thomas Miller to keep him out of the way.
 During the fire, Richey asked Nichols, "Why don't we finish it now, since you think you're so bad[?]" Richey also asked Candy if the fire had scared her. When she replied it had, Richey told her, "if he couldn't have me, that nobody would * * *." Altimus reported that Richey, as he looked over the fire damage, drank a beer, laughed, and said, "It looks like I did a helluva good job, don't it."
 Richey admitted that he had earlier gotten two plants from the K J Greenhouse for Candy, and police found those plants outside Candy's apartment. The K J owner identified them as having been stolen from his greenhouse. Richey had also offered to steal two plants for Peggy that evening. The K J owner confirmed that [595 N.E.2d 920] paint thinner and gasoline were kept in two unlocked storage sheds. Gasoline and paint thinner could have been stolen from these sheds; the owner did not know if any was missing.
 Assistant State Fire Marshal Robert Cryer concluded from the physical evidence and burn patterns that an accelerant had been used. An accelerant had been poured on the apartment's wooden deck, the fire's point of origin, as well as the living room rug. A smoke detector had been pulled from the ceiling before the fire. The fire was a very fast, hot, intense fire because of the accelerant.
 Gregory DuBois, a consulting engineer, agreed that the fire had been caused by arson and that accelerants had been used. One rug sample from the Collins apartment contained gasoline, and another rug sample revealed paint thinner. Wood chips from that apartment's deck also contained paint thinner. However, laboratory tests failed to reveal any accelerants on Richey's fatigues or boots.
 Chief Miller interviewed Richey as a witness on the morning of June 30 and also obtained his statement in the afternoon after advising him of his rights. By July 1, the investigation had focused on Richey, and police arrested Richey for arson and took further statements after advising him of his rights. Police tape-recorded an interview of Richey on July 1. Fire Marshal Cryer and Assistant Prosecuting Attorney Randy Bassinger participated in that interview.
 In these statements, Richey maintained that he had been drunk on June 30 and did not remember much. However, he denied starting the fire or knowing how it started. He also denied that Hope had asked him to baby-sit Cynthia, and claimed that he had been at his father's apartment when the fire began. Richey did admit that he knew Cynthia was in Hope's apartment; he had stopped and looked in on her while she was sleeping during the party. Richey also claimed that he had secret ways with witnesses so they would not testify against him. In a later statement, he said he would cut the prosecutor's throat.
 A grand jury indicted Richey for aggravated murder with a specification alleging murder in the course of arson, aggravated arson, breaking and entering (the greenhouse), involuntary manslaughter, and child endangering. A panel of three judges convicted Richey of all charges, save the manslaughter charge, which was dropped. Following a pre-sentence investigation, mental evaluation, and mitigation hearing, the panel sentenced Richey to death for aggravated murder and consecutive prison terms for the other offenses. The court of appeals affirmed the convictions and sentence.
 State v. Richey (1992), 64 Ohio St.3d 353, 353-56.
The United States Supreme Court denied certiorari. On May 2, 1996, Richey filed his first petition for post-conviction relief. On March 26, 1997 after hearing oral arguments on the merits of the claims, the trial court denied the petition without taking further evidence. The trial court entered findings of fact and conclusions of law on May 14, 1997. On November 18, 1997, this Court affirmed the trial court's denial of Richey's first petition for post-conviction relief.
On September 4, 1999, Richey filed a second petition for post-conviction relief. On January 24, 2000, without holding an evidentiary hearing, the Court of Common Pleas of Putnam County denied Richey's second petition for post-conviction relief. The journal entry read in pertinent part:
 "As the instant petition alleges, substantially the same issues or grounds for relief previously raised in defendant-petitioner's prior post-conviction relief motion, no findings of fact and conclusions of law are required. The underlying petition is merely a repackaged version of the prior filing."
On appeal from that denial Richey makes the following four assignments of error:
 The trial court erred by denying Petitioner's request for post-conviction relief based on the State's failure to disclose, in violation of Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and by the Ohio Constitution, material exculpatory evidence concerning the tendency of residents in the apartment building where the fire occurred to disconnect their smoke alarms because the alarms were too sensitive.
 The trial court erred by denying Petitioner's request for post-conviction relief based on the State's failure to disclose, in violation of Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and by the Ohio Constitution, material exculpatory evidence that Hope Collins sometimes disconnected the smoke detector in the apartment where the fire occurred.
 The trial court erred by denying Petitioner's request for post-conviction relief based on the State's failure to disclose, in violation of Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and by the Ohio Constitution, material exculpatory evidence concerning the tendency of residents in the apartment building where the fire occurred to disconnect their smoke alarms because the alarms were too sensitive and material exculpatory evidence that Hope Collins sometimes disconnected the smoke detector in the apartment where the fire occurred.
 The trial court erred by denying Petitioner's request for an evidentiary hearing because the Post-Conviction Petition and supporting exhibits demonstrate that Petitioner is entitled to relief based on the State's failure to disclose material exculpatory evidence in violation of Petitioner's rights as guaranteed by the United States Constitution and the Ohio Constitution.
Initially we note that Richey's first three assignments of error address claimed error of substantive law made by the trial court when dismissing the second petition for post-conviction relief. The fourth assignment of error claims procedural error by the trial court for dismissing Richey's petition without an evidentiary hearing. For purposes of convenience and clarity we address the first three assignments of error together and will address the claimed procedural error separately.
The proceedings outlined above reveal that the petition for post-conviction relief at issue in this appeal was indeed a second or successive petition for post-conviction relief under R.C. § 2953.21 governed by R.C. § 2953.23 which follows in pertinent part:
 Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a * * * second petition or successive petitions unless both of the following apply:
Either of the following applies:
 The petitioner shows that the petitioner was unavoidably prevented from the discovery of facts upon which the petitioner must rely to present the claim for relief.
 Subsequent to the period prescribed above in division (A)(2) of Section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
 The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.
Thus according to the controlling statute, if the petitioner fails to satisfy any of the stated requirements, the court "may not entertain" his petition for post conviction relief. First and foremost the petitioner must show one of two circumstances: either (a) that he "was unavoidably prevented from discovery of the facts upon which" his petition relies or (b) that the petition asserts a claim based on a new retroactive federal or state right.
The record reveals with certainty that Richey's claim for relief alleging the failure of the State to release exculpatory evidence is not based on a new or retroactive federal or state right. The rights of a criminal defendant to the discovery of exculpatory evidence arose from the federal and state constitutions. In Brady v. Maryland the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194,1196-1197, 10 L.Ed.2d 215, 218.
The question thus becomes was Richey "unavoidably prevented from discovery of the facts upon which" his petition relies. In order to properly consider this question we review the dismissal of Richey's initial petition for post conviction relief.
The first petition as noted above was determined to be legally insufficient and thus Richey was not entitled to relief. Appeal was taken and the judgment was affirmed. In his first petition Richey pointed to several errors at trial which entitled him to relief. His initial petition for relief states in pertinent part:
 "108. Based upon evidence outside the record, the judgment and sentence against Richey are void or voidable because Richey was denied the effective assistance of counsel during the guilt phase of his trial.
 109. One of the prosecution's witnesses at trial was Peggy Villearreal, a neighbor of Hope Collins, the mother of the decedent. Villearreal had critical evidence supporting Richey's defense that was not presented at trial: (1) that Cynthia Collins had a history of starting fires including a fire she started in Villearreal's sofa with a cigarette and a fires he started in her own mother's bed with a curling iron and (2) that Hope Collins herself had disconnected the smoke detector on the evening of the fire because she was cooking steaks on Villearreal's electric skillet and that the smoke detector was disconnected when Villearreal left Collins' apartment that night after dinner. Villearreal provided this information to Richey's trial counsel who failed to introduce it at trial."
On the appeal of his second petition, now before us, Richey argues that there has been a violation of his discovery rights as provided by the United States Constitution, setting forth the same supporting evidence that is outlined above and used in his first petition for relief but claiming it is new evidence because it was mentioned by a different witness despite the fact that the substance of the testimony is exactly the same. Specifically, Richey claims the following in his second petition for post conviction relief:
 "10. Roy Sargent, * * * testified that Peggy Villearreal, a neighbor of Hope Collins, informed the Sheriff's Department during the investigation that Ms. Collins disconnected her smoke detector due to its sensitivity.
 11. Neither the evidence that the apartment tenants disconnected their smoke alarms nor the evidence that Hope Collins disconnected the smoke alarm in her apartment was revealed to Richey's defense by the prosecution at trial."
We note that in his first petition Richey claimed that his trial counsel was ineffective because he had received the exculpatory evidence outlined above and failed to introduce it at trial. Now, in his second petition, Richey claims that the prosecutor failed to disclose the exculpatory evidence to the defense at all. Considering that Richey argued in his initial petition for post-conviction relief that the evidence described was available to his attorney but not used, we cannot now indulge his assertion that the same evidence was withheld by the State nor can we attribute error to the trial court in denying a petition for post conviction relief so founded. Therefore, no error having been shown Richey's first three assignments of error are overruled.
In his fourth assignment of error Richey claims that the trial court erred because it failed to hold an evidentiary hearing before dismissing his petition for post-conviction relief. However, the trial judge, considering a second or successive petition for post conviction relief on the same conviction, is not required by R.C. 2953.23 to hold an evidentiary hearing before dismissing the second or successive petition for statutory insufficiency. No error having been shown Richey's fourth assignment of error is also overruled and the judgment of the Court of Common Pleas of Putnam County is affirmed.
Judgment affirmed.
 ______________________________ BRYANT, PRESIDING JUDGE
SHAW and WALTERS, JJ., concur.